In re HARNISCHFEGER
INDUSTRIES, INC.,
et al., Debtors.

Beloit Liquidating Trust, Plaintiff,

v.

Beloit Walmsley Limited, Defendant.

Bankruptcy No. 99–02171 PJW.
Adversary No. 01–04688.

United States Bankruptcy Court,
D. Delaware.

Jan. 2, 2003.

Thomas G. Macauley, Zuckerman Spaeder LLP, Wilmington, DE, for joint administrators of Beloit Walmsley Limited.

Robert J. Dehney, Jason W. Staib, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Wendell H. Adair, Jr., Christopher Donoho, Stroock & Stroock & Lavan LLP, New York City, Co–Counsel to the Plan Administrator for the Beloit Liquidating Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This is with respect to Defendant's Motion to Dismiss the Complaint for Insufficiency and Untimeliness of Service of Process (Doc. # 9). Defendant Beloit Walmsley, Ltd. ("Walmsley" or "Defendant") contends that under Fed.R.Civ.P. 12(b)(5), made applicable to bankruptcy cases by Fed. R. Bankr.P. 7012, the court should dismiss the adversary proceeding brought by Beloit Liquidating Trust ("BLT" or "Plaintiff") because BLT's three attempts at service were improper and untimely.[1] For the reasons set forth below I will deny Defendant's motion to dismiss.

## BACKGROUND

Harnischfeger Industries, Inc. ("HII"), and approximately fifty other related entities, including Beloit Corporation ("Beloit"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), on June 7, 1999. As part of the reorganization plan, confirmed on May 18, 2001, HII created BLT to liquidate HII's paper and pulp businesses.[2]

Walmsley is a non-debtor foreign subsidiary of Beloit that filed for administration proceedings in England shortly after HII and Beloit filed for bankruptcy in this Court. The presiding English judge granted the administration request and appointed William Kenneth Dawson and Angus Matthew Martin of Deloitte & Touche joint administrators of Walmsley (the "Administrators"). In the chapter case the Administrators have filed a total of seven proofs of claim against Beloit totaling over $67 million in general unsecured claims and just over $5 million in administrative expense claims. In those proofs of claim Walmsley's address is: Beloit Walmsley Ltd., c/o William K. Dawson, Deloitte & Touche, P.O. Box 500, 201 Deansgate, Manchester M50 2AT England.

Mr. Thomas G. Macauley ("Macauley") of the law firm of Zuckerman & Spaeder LLP was retained by the Administrators

---

**1.** This adversary claim was initially brought by the Beloit Corporation. Harnischfeger Industries, Inc.'s Third Amended Joint Plan of Reorganization created the Beloit Liquidating Trust as successor in interest to Beloit Corporation and certain other liquidating debtors. In accordance with the terms of the confirmed reorganization plan, Beloit Liquidating Trust was substituted as plaintiff in the current adversary proceeding on November 30, 2001. *See* Order Approving Stipulation and Order of Substitution Of Named Plaintiff And Substitution of Counsel (Doc. 6).

**2.** The following debtors constitute the Beloit Liquidating Trust: Beloit Corporation; Beloit Holdings, Inc.; Beloit International Services, Inc.; Beloit Iron Works, Inc.; Beloit Pulping Group, Inc.; Beloit Technologies, Inc.; BWRC Dutch Holdings, Inc.; BWRC, Inc.; Fitchburg Corporation; Optical Alignment Systems and Inspection Services, Inc.; PEAC, Inc.; PEOC, Inc.; PMAC, Inc.; Princeton Paper Company LLC a/k/a/ Fitchburg; and Rader Resource Recovery, Inc.

to represent the Administrators in the chapter case. Macauley filed a notice of appearance in the chapter case on October 20, 2000. In order to represent his client's interests, Macauley attended three hearings in addition to participating in other legal activities in the chapter case.[3] These activities include submitting three motions, entering into a stipulation and order, filing an administrative claim and objecting to confirmation of plan of reorganization (which objection was not pursued).

Walmsley has asserted significant unsecured and administrative claims against Beloit. In turn, Beloit asserted nearly $77 million in claims against Walmsley in the English administration proceedings. These claims are the result of substantial business dealings between the two parties and significant obligations resulting from intercompany receivables and advance payments. By the complaint, filed on June 6, 2001, BLT seeks to avoid $14,221,884.74 in transfers allegedly made by Beloit to Walmsley during the one year insider preference period.

The complaint was filed one day prior to the expiration of the two year statute of limitations for preference actions. 11 U.S.C. § 546(a)(1). A summons was issued on June 28, 2001 and service was made the following day by first class mail to "Beloit care of Barclays Bank, Ltd., Silver Street, Bury, B19 0DJ, GBR 00000-0000 Lancashire, England" (the "First Service"). Service was again made on July 26, 2001 by first class mail on the same Barclays Bank address and on Macauley at the Zuckerman Spaeder's Delaware office address (the "Second Service"). Plaintiff amended its complaint on December 5, 2001 and an amended summons was issued and immediately served by first

class mail on Macauley and on Walmsley care of the Administrators' Deloitte & Touche address in Manchester, England (the "Third Service").

## DISCUSSION

### I. Service on Barclays Bank

Plaintiff's First Service was insufficient. In its response brief Plaintiff concedes that the Barclays Bank address was inappropriate. Doc. 10 at 4. Based on this concession, the Court has also concluded that the Second Service of Barclays Bank was also deficient. Defendant's sole connection to Barclay's Bank consisted of a bank account designated to receive intercompany transfers. Plaintiff apparently felt that Walmsley's maintaining a bank account at Barclays also constituted a grant of authority to accept service of process.

"For service of process to be valid upon an agent, it must be shown that he was actually appointed by the defendant for the specific purpose of receiving process." *United States v. Marple Cmty. Record, Inc.,* 335 F.Supp. 95, 101 (E.D.Pa. 1971). The party seeking to have the service of process declared valid has the burden of proving that the "agent" receiving service had either express or implied authority to accept service and bind the principal. *Hemmerich Indus. v. Moss Brown & Co., Inc.,* 114 F.R.D. 31, 32 (E.D.Pa. 1987). Plaintiff has not met this burden. There has been no showing that Barclays had either express or implied authority to accept service on behalf of Walmsley.

### II. Service on Macauley of Zuckerman Spaeder

Attorneys are authorized to accept service on behalf of their clients either

---

3. It appears that Macauley has attended a total of six hearings on behalf of Walmsley as of the date of this opinion. However, only three of these hearings occurred prior to the filing of the adversary complaint.

expressly or impliedly. *Viking Metallurgical Corp. v. A. Johnson & Co., Inc.*, Civ. A. No. 87–3859, 1987 WL 19241, at \*3 (E.D.Pa. October 28, 1987). However, express or implied authority is not conferred upon an attorney simply because he is fulfilling duties normally performed by an attorney. *See Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33, 39 (Bankr.E.D.N.Y.1996). BLT has not presented evidence that Walmsley expressly authorized Macauley to accept service on its behalf. Having determined that Macauley lacked express authority to receive service, I turn to BLT's implied authorization argument.

■ Implied agency for service has been found when a defendant through its counsel takes an active role in the related bankruptcy case. *See Reisman v. First New York Bank for Business (In re Reisman)*, 139 B.R. 797, 801 (Bankr.S.D.N.Y. 1992). Agency is implied when an attorney's activities can be considered "substantial" and involve "the significant exercise of independent judgment and discretion." *See Ms. Interpret v. Rawe Druck—und Veredlungs—GmbH (In re Ms. Interpret)*, 222 B.R. 409, 416 (Bankr.S.D.N.Y.1998). Active appearance on behalf of an attorney's client includes entering an appearance and filing motions to convert a case and to conduct an examination of the debtor. *See Reisman*, 139 B.R. at 801 (noting that attorney vigorously represented his client and took an active role in the related chapter 11 case). Additionally, regular attendance at creditor committee meetings or participation in creditor subcommittees may equate to active participation by the attorney on behalf of the client. *See Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 395 (S.D.N.Y.1993). Significant exercises of independent judgment, such as an attorney voting at a creditor meeting without client consultation, will also create an

implied agency for service relationship between the client and attorney. *See Ms. Interpret*, 222 B.R. at 416–17 (noting that attorneys represented client at meetings and voted without adjourning the proceedings to confer with client). Vigorous opposition to third party finance arrangements, *Paddington Press, Ltd. v. Hill Samuel & Co., Ltd. (In the Matter of Paddington Press)*, 5 B.R. 343, 345 (Bankr.S.D.N.Y. 1980), and commenting on reorganization plans and reviewing complaints in adversary pleadings, *Luedke*, 159 B.R. at 395, have also been held sufficient to create an implied agency relationship between attorney and client.

■ In the chapter case, Macauley entered an appearance (HHI Doc. 6670) and attended three omnibus hearings prior to the commencement of the subject adversary proceeding. Macauley filed a motion to reconsider a rejected claim (HHI Doc. 6931) and a stipulation and order related to that motion (HHI Doc. 7355). An objection to plan confirmation was also filed by Macauley (HHI Doc. 8675). This objection was never addressed during hearings and Walmsley chose not to pursue the objection. Finally, Macauley has filed a administrative expense claim on behalf of Walmsley (HII Doc. 8906) and a motion to excuse the late filing of that claim (HHI Doc. 9117).

In my view, Macauley's representation of Walmsley and the Administrators in the chapter case did not rise to the level of active participation or significant independent judgment other courts have found necessary to imply an agency for service relationship. As reflected in the record of the chapter case, Macauley's actions appear to be routine and do not provide sufficient basis for me to find on implied agency for service of process in an adversary proceeding. Having determined that Macauley lacked express or implied au-

thority to accept service of process on behalf of Walmsley, I find that Plaintiff's Second Service and Third Service on Macauley were deficient.

## III. Plaintiff's Third Service on Walmsley

Despite Defendant's arguments to the contrary, I find that Plaintiff's Third Service was effective. Although service occurred after 183 days, Plaintiff did serve Defendant at the correct address: the Administrator's Deloitte & Touche offices in Manchester, England. While acknowledging that the correct address was used, Defendant relies on the argument that the method of service used was inappropriate. Walmsley argues that first-class United States mail will not provide prompt notice to foreign defendants and, therefore, it is not effective for foreign service. Defendant has failed to articulate a sound basis for its position.

### A. Foreign Service of Process

Service of process in adversary proceedings is governed by Fed. R. Bankr.P. 7004(a) and Fed.R.Civ.P. 4.[4] Foreign corporations with their principal place of business outside the United States may be served in the same manner as foreign individuals. *See* Rule 4(h)(2). One method for serving individuals that is also applicable to corporations, is to serve process according to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").[5] States unable or unwilling to comply with certain articles of the Convention are allowed to submit declarations detailing their objections. An article that has been objected to by another state may not be used within its borders to effect service of process. Article 10 of the Hague Convention describes methods whereby parties may effect service in a foreign country.[6]

---

4. Fed. R. Bankr.P. 7004 makes certain sections of Fed.R.Civ.P. 4 applicable to adversary proceedings under the Bankruptcy Code. Fed. R.Civ.P. 4 states in relevant part:

(f) Service Upon Individuals in a Foreign Country. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed,...may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents...

. . .

(h) Service Upon Corporations and Associations. Unless otherwise provided by federal law, service upon a domestic or foreign corporation ... shall be effected: ...

(2) in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery...

. . .

(m) Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the

filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

5. The Hague Convention entered into effect for the United States on February 10, 1969. The text of the convention is printed following the text of Federal Rule of Civil Procedure 4 and may also be found at 20 U.S.T. 361.

6. Article 10 of the Hague Convention states:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents

This includes the ability to send judicial documents through "postal channels." *See* Hague Convention, art. 10(a).

## B. Applicability of the Hague Convention

■■■ As a ratified treaty, the Hague Convention is the supreme law of the land. *See* U.S. Const. Art. VI, cl. 2; *Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir.1986). The United States and the United Kingdom signed the Hague Convention without objecting to Article 10(a). Service of judicial and extrajudicial documents has been found to be properly effected by postal channels in the United Kingdom.[7] *See McCarron v. British Telecom,* 2001 WL 632927, at *1–2, 2001 U.S. Dist. LEXIS 7424, at *3–7 (E.D. Pa. June 6, 2001); *EOI Corp. v. Medical Marketing Ltd.,* 172 F.R.D. 133, 142–43 (D.N.J.1997).

Courts differ in their interpretation of the word "send" in Article 10(a). It does not appear that the Supreme Court, the Third Circuit Court of Appeals or the District Court for the District of Delaware have directly addressed this issue. However, the Second Circuit Court of Appeals has held that Article 10(a) permits service of process through postal channels. *See Ackermann,* 788 F.2d at 840–41. The Second Circuit noted that several other federal courts had held service by mail was proper and concluded that the Hague Convention superceded any inconsistent federal law. *See id.* at 840. The Second Circuit determined that "send" meant "service of process" and the drafters only varied the language used. *See id.* at 839. The District of New Jersey has adopted this approach. *See Trump Taj Mahal Assoc. v. Hotel Services, Inc.,* 183 F.R.D. 173 (D.N.J.1998); *Eli Lilly & Co. v. Roussel Corp.,* 23 F.Supp.2d 460 (D.N.J.1998); *EOI Corp.,* 172 F.R.D. at 143.

The Eighth Circuit Court of Appeals has concluded that "send" is not the same as "service of process" and service of process had to be effected initially in accordance with one of the other articles of the Hague Convention. *See Bankston v. Toyota Motor Corp.,* 889 F.2d 172, 174 (8th Cir.1989). According to the Eighth Circuit, Article 10(a) only referred to the sending of judicial documents after service of process had been effected. The Eighth Circuit's decision relied on the Supreme Court's mandate that when "a legislative body 'includes particular language in one section of the a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion.'" *See id.* at 174 (citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). One decision by the District Court for the Eastern District of Pennsylvania has followed the Eighth Circuit's interpretation of Article 10(a). *See Paul Eggear v. Shibusawa Warehouse Company,* No. 00–CV–4636, 2001 WL 267881, at *5–6, 2001 U.S. Dist. LEXIS 2868, at *16–17 (E.D.Pa. March 19, 2001) (holding that Article 10(a) did not permit service of process through postal channels on Japanese company in Japan). *But see McCarron,* 2001 WL 632927, at *1–2, 2001 U.S. Dist. LEXIS, at *3–7 (finding Article 10(a) permitted ser-

---

directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

**7.** The court notes that the United Kingdom did submit reservations and declarations regarding Article 10(b) and (c).

vice of process on English corporation in the United Kingdom).

I am persuaded by the reasoning of *Ackermann* and its progeny. The Hague Convention focuses on service of process and its objectives are to provide for international service of process and to simplify the procedures for service of parties in foreign countries. In contrast to statutory construction, treaty provisions are to be interpreted according to context, drafting history and practical application. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) (citing *Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) and *Choctaw Nation of Indians v. United States,* 318 U.S. 423, 63 S.Ct. 672, 87 L.Ed. 877 (1943)). Interpreting one sub-article of the Hague Convention as addressing the sending of documents following service would seem to be taking that particular provision out of context. Substantial scholarly writing and analysis also exists that has determined that "send" means the same as "service of process." *See EOI Corp.,* 172 F.R.D. at 138 (citing recent law review articles addressing the Article 10(a) send v. service controversy). Finally, I note that decisions from the District of New Jersey and the Eastern District of Pennsylvania have agreed that Article 10(a) permits mailing of service of process to parties located in the United Kingdom. *See McCarron,* 2001 WL 632927, at *1–2, 2001 U.S. Dist. LEXIS at *6–7; *EOI Corp.,* 172 F.R.D. at 140–42.

### C. Extension of Time to File Service under Rule 4(m)

The particular facts of this case result in another question for the Court: does Rule 4(m) apply to the service of corporations in foreign countries? Courts attempting to answer this question are split. Some courts have held that Rule 4(m) only excludes individuals from the 120 day time requirement while other courts have held that there is no time limit for service in foreign countries regardless of whether an individual or a corporation is involved. I need not address this question in this opinion because it is irrelevant to the outcome. If Rule 4(m)'s time frames do not apply to service on foreign corporations, then Defendant's motion must be denied. To the extent that Rule 4(m) does apply to Plaintiff's service on Walmsley, this Court's decision is governed by the Third Circuit's holding in *Petrucelli v. Bohringer & Ratzinger, GmbH,* 46 F.3d 1298 (3d Cir.1995). In *Petrucelli,* the Third Circuit analyzed the 1993 amendments to Rule 4 that created Rule 4(m). The Third Circuit found that the amendments significantly altered Rule 4 and that courts were granted greater discretion in determining whether to extend time to serve process. The Third Circuit created a two-pronged inquiry that requires lower courts to first determine whether good cause exists for failing to timely effect service of process. If a court finds that good cause exists, the extension of time must be granted. *See id.* at 1305. Under the second prong, if a court determines that good cause does not exist, it may use its discretion to extend time to effect service. *Id.*

I find that good cause does not exist and that extension of Rule 4(m)'s time for service requirement, on this basis, would be inappropriate. Good cause will not be found when the failure is based on "inadvertence of counsel," "half-hearted efforts by counsel" or "reliance upon a third party." *See id.* at 1307. In addition, a plaintiff's "disregard for ... the 'technical niceties' of service of process" will not suffice for good cause. *See Ayres v. Ja-*

*cobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir.1996).

Plaintiff's first two attempts to serve Walmsley at the Barclays Bank address do not meet the Third Circuit's good cause standard. BLT attempted to serve Walmsley at a patently problematic address. Service can be considered valid if mailed to the address a creditor provided on the proof of claim form. The proofs of claim forms were mailed to the Defendant by Beloit's claims agent at an address other than Walmsley's Administrators' address at Deloitte & Touche. In filing the proofs of claim the Administrators enclosed a letter to the claims agent specifically requesting an address correction. The Administrators provided their address at Deloitte & Touche's Manchester, England offices and requested that all correspondence be addressed to them at the Deloitte & Touche address. The First Service and Second Service failed to follow that request. Plaintiff argues that with over 600 adversary proceedings, its attorneys were unable to keep tabs on all of the different service of process and claims activities. I am not persuaded that Plaintiff's performance in this regard is excusable. Thus, I find that extending the time for service based on good cause is inappropriate.

 Having found that BLT failed to establish good cause, the Court must analyze the facts to determine if discretion should be exercised to extend the time for service. The Court may look at whether the statute of limitations has run in exercising its discretion. The Third Circuit has stated that the expiration of the statute of limitations may be addressed only after the Court has conducted an examination of good cause. *See Petrucelli*, 46 F.3d at 1306. While the expiration of the statute of limitations may justify relief, it is only one factor to be considered in this

analysis. *Id.* The Court of Appeals has also directed that cases should be disposed of on the merits whenever practical. *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 122 (3d Cir.1983).

A number of factors weigh in favor of extending time to effect service of process in the subject proceeding. First, Rule 4(m) mandates that a case be dismissed without prejudice for failing to properly effect service, but because the two year statute of limitation has run, dismissing BLT's complaint now will effectively result in a dismissal with prejudice. Second, immediately following the filing of the complaint BLT attempted, albeit ineffectively, to serve process on Defendant. BLT's actions distinguish the present case from *Parker v. Delaware*, No. 98–445–SLR, 2000 WL 291537, 2000 U.S. Dist. LEXIS 3112 (D. Del. Mar. 13, 2000). In *Parker*, the district court declined to extend time to effect service because the statute of limitations had expired even before the plaintiff filed the complaint and service was not even attempted until five months after the complaint was filed. Here, BLT filed its adversary complaint before the expiration of the statute of limitations and attempted service within a week thereafter. Defendant points out that Plaintiff filed its adversary action only one day before the statute of limitations expired. In this regard, I note that it is not unusual for avoidance actions to be filed on the eve of, or very close to, the two year deadline imposed by 11 U.S.C. § 546(a)(1)(A). Finally, Walmsley has not alleged that it will suffer prejudice if the Court decides to extend BLT's time to serve process. I do not believe that prejudice can be established in this case. The Administrators were appointed shortly after Beloit filed its chapter 11 petition. Thus, Walmsley has been represented by sophisticated persons who presumably understood that certain

intercompany transfers may have been preferential and could be subject to an avoidance action by the debtor in possession. Further, Walmsley presumably had notice of the adversary complaint as of the Second Service, which was made four months before the Third Service. Although the Second Service was ineffective, there is no reason to assume, and I cannot conceive of a reason why, Macauley would not have informed his client that the summons and complaint had been served on him.

## CONCLUSION

For the reasons stated herein, I will deny Defendant's Motion to Dismiss the Complaint for Insufficiency and Untimeliness of Service of Process (Doc. # 9).