Thomas J. BRAND, individually and as the Administrator of the Estate of Ann M. Brand, deceased, Plaintiff,

v.

MAZDA MOTOR OF AMERICA, INC.; Mazda Motor Corporation; Toyo Kogyo Co., Ltd.; Mazda (North America), Inc., Defendants.

No. 95–4139–SAC.

United States District Court, D. Kansas.

Feb. 27, 1996.

Paul D. Post, Topeka, KS, for Thomas J. Brand.

Stephen M. Gorny, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, W. Russell Welsh, Douglas S. Laird, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Mazda Motor of America, Inc., Mazda Motor Corporation, Toyo Kogyo Co. Ltd. and Mazda Inc.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the motion to dismiss or, in the alternative, to quash purported service of process (Dk. 6),[1] brought by the defendants Mazda Motor Corporation ("MC") and Toyo Kogyo Co., Ltd. ("TKC"). The action arises from an car accident in which the plaintiff's wife, Ann Brand, was killed when the 1991 Mazda Protege she was operating collided with another car at an intersection. The plaintiff brings this products liability action alleging his wife's car was not crashworthy and had a defective occupant restraint system. The plaintiff commenced his action in the District Court of Shawnee County, and the defendants removed this action to federal court.

In his petition, the plaintiff alleges that the defendant MC is "believed to be the parent company responsible for the world wide manufacturing and distribution of Mazda automobiles," that the defendant TKC is "believed to be the manufacturing division and subsidiary of" MC, that the defendant Mazda North America, Inc. ("MNA") is "believed to be the North American distributor of Mazda vehicles," and that the defendant Mazda Motor of America ("MMA") is "believed to be responsible for the distribution and delivery of Mazda automobiles in the United States." (Dk. 1). The plaintiff further alleges in his petition that the defendant foreign corporations "conduct business activities within the United States and the state of Kansas" and "were involved in the process of manufacturing, distributing and selling" the car owned and driven by the plaintiff's deceased wife. (Dk. 1).

In the notice of removal (Dk. 1) and in the motion to dismiss (Dk. 7), it is represented that TKC was the former name of MC and that TKC is no longer a viable entity. MC further states that it is a foreign corporation incorporated under the laws of the Country of Japan and not any state within the meaning of 28 U.S.C. § 1332(c). MC further represents that its principal place of business is in the Country of Japan. The plaintiff does not dispute any of these representations and even concedes that MC and TKC are apparently the same corporation. Since the plaintiff now refers to TKC and MC as simply MC, the court will do the same.

The plaintiff's counsel mailed a summons and a copy of the complaint to MC in Hiroshima, Japan, by registered mail. The counsel received the return receipt showing the materials were delivered to MC. The plaintiff also had an alias summons issued. The Secretary of State of Kansas then sent the alias summons and complaint by registered mail to MC in Hiroshima, Japan. The Secretary of State then filed with the state district court the return receipt showing delivery to MC.

MC seeks to dismiss the plaintiff's complaint or to quash the purported service pursuant to Rule 12(b)(2), (4) and (5) of the

---

1. The defendants filed an amended motion to dismiss (Dk. 9) approximately two weeks later.

Federal Rules of Civil Procedure.[2] Because the United States and Japan are signatories to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"),[3] MC argues that Rule 4(f)(1) of the Federal Rules of Civil Procedure requires the plaintiff to serve process on MC in compliance with the Hague Convention. According to MC, the plaintiff's service did not conform with the Hague Convention. He did not serve the designated Central Authority for Japan, and he did not translate service and the accompanying documents into Japanese.

In his response, the "[p]laintiff concedes that service of process has not been attempted or made upon Mazda Corporation pursuant to the Hague Convention." (Dk. 17 at ¶ 13). Still, the plaintiff believes he has properly served MC by serving MC's wholly owned subsidiaries, the defendants MMA and MNA, and by serving MC's involuntary agent, the Kansas Secretary of State. The court addresses the plaintiff's arguments *seriatim.*

Upon a pretrial motion to dismiss for insufficient service of process, the plaintiff must make a prima facie showing that service satisfied the statutory requirements and the constitutional requirement of due process. *Oltremari v. Kansas Social & Rehabilitative Service,* 871 F.Supp. 1331, 1349–51 (D.Kan.1994); *see Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). A court may decide such jurisdictional issues by reference to affidavits, after a pretrial evidentiary hearing, or at trial if the issues are intertwined with the merits of the suit. *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992). When opposing a motion to dismiss supported by affidavits and other written materials, the plaintiff need only make a

prima facie showing and may rely on the "well pled facts" of the complaint if uncontroverted by the movant's affidavits. *Id.* at 174. If the jurisdictional allegations in the complaint are challenged, the plaintiff must then support them with competent proof. *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir.1989). At this initial stage, factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. *Oaklawn Apartments,* 959 F.2d at 174. If the factual disputes require an evidentiary hearing or must await a trial on the merits, the plaintiffs must then prove the critical jurisdictional facts by a preponderance of the evidence. *Id.*

The plaintiff does not allege in his petition nor does he show in his response that he attempted or intended to serve MC by his service on the defendants MMA and MNA. As the plaintiff correctly points out, the Supreme Court has held that if the plaintiff can serve the foreign corporation on a domestic agent under state law without a transmittal abroad, the Hague Convention does not apply, and service may be proper. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 707, 108 S.Ct. 2104, 2112, 100 L.Ed.2d 722 (1988). The court sees no reason to delve into the Kansas law concerning the service of process based on a parent-subsidiary corporate relationship and the facts necessary to allow service on the subsidiary corporation to suffice for the parent corporation. The record simply does not show that the plaintiff has ever attempted to serve the domestic corporations, MMA or MNA, as agents for the foreign parent corporation, MC. The plaintiff's attempt at service on MC by the direct registered mailing to Japan constitutes a transmittal of documents abroad which triggers the Hague Convention procedures. *See Sheets v. Yamaha Motors Corp., U.S.A.,* 891 F.2d 533, 537 (5th Cir.1990).

2. The plaintiff recently requested oral argument on the motion to dismiss. The written request does not offer any reasons for granting oral argument. The court does not believe that oral argument would materially assist it in deciding the motion.

3. Nov. 15, 1965, 20 U.S.T. 361; TIAS 6638, 28 U.S.C.A. Federal Rules of Civil Procedure 1–11 at 210 (1992). The Convention is a multilateral

treaty intended to provide "a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988) (citations omitted).

■ MC understands the plaintiff also to argue that service of process by mail satisfies the Hague Convention, specifically Article 10(a), as it has been interpreted by one line of cases.[4] Though unsure if the plaintiff even makes this argument, the court will reject this interpretation and will fall in line behind those cases which have held that Article 10(a) uses "send" in reference to documents other than those associated with the service of process. *See* Beverly L. Jacklin, Annotation, *Service of Process by Mail in International Civil Action as Permissible under Hague Convention,* 112 A.L.R.Fed. 241, 257 § 3(a) (1993) (citing for Tenth Circuit precedent *Arthur v. Nissei ASB Co.,* 1988 U.S.Dist. LEXIS 7262 (D.Kan.1988)); *see, e.g., Bankston v. Toyota Motor Corp.,* 889 F.2d 172, 173–74 (8th Cir.1989); *Gonnuscio v. Seabrand Shipping Ltd.,* 908 F.Supp. 823 (D.Or.1995); *Postal v. Princess Cruises, Inc.,* 163 F.R.D. 497, 499–500 (N.D.Tex.1995); *Pennebaker v. Kawasaki Motors Corp., U.S.A.,* 155 F.R.D. 153, 157 (S.D.Miss.1994); *Gallagher v. Mazda Motor of America, Inc.,* 781 F.Supp. 1079, 1081–82 (E.D.Pa.1992). *But see, e.g., Ackermann v. Levine,* 788 F.2d 830, 839 (2nd Cir.1986); *G.A. Modefine v. Burlington Coat Factory Warehouse Corp.,* 164 F.R.D. 24, 25 (S.D.N.Y.1995). Since the drafters were careful to use "serve" and "service" in several other provisions of this treaty, this court shares the reluctance of other courts to believe the drafters were simply careless in using "send" in Article 10(a) as opposed to "serve." The court, therefore, concludes the registered mailings to MC in Japan did not comply with the Hague Convention.

4. Article 10(a) states: "Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad."

5. In pertinent part, K.S.A. 60–304(f) provides: "Whenever any foreign corporation ... authorized to transact business or transacting business without authority in this state fails to appoint or maintain in this state a resident agent upon whom service of legal process or service of any such notice or demand may be had, ..., the secretary of state shall be irrevocably authorized as the agent and representative of the foreign corporation ... to accept service of any process.... In the event that any process, ... is served on the secretary of

■ Relying on K.S.A. 60–304(f),[5] the plaintiff argues that the Kansas Secretary of State is the agent and representative designated to receive service of legal process by reason of MC being a foreign corporation that has transacted business in Kansas but that has not designated a resident agent. Citing the *Schlunk* case, the plaintiff insists the Hague Convention does not govern the service of process on the Kansas Secretary of State as MC's involuntary agent. MC counters with two arguments: first, K.S.A. 60–304(f) does not authorize service on the Secretary of State here because MC does not transact business in Kansas, and second, the Hague Convention still applies as K.S.A. 60–304(f) still requires the transmittal of documents abroad.

Nine days after filing its reply brief, MC submitted an affidavit from the Vice President of Finance, Human Resources and Administration of MMA, Jeff Badrtalei, who avers that to the best of his knowledge "MC does not do business in the United States." [6] (Dk. 24). The plaintiff did not file any affidavits or other evidence to support his bare allegation that MC conducts business in Kansas. Nor does he object to the proof offered or procedure employed by MC in contesting this critical jurisdictional fact. From the record as it now stands, the plaintiff has not made a prima facie showing that MC is transacting business in Kansas for purposes of K.S.A. 60–304(f).[7]

At this point, the plaintiff has not demonstrated that process has been properly served on MC. In such circumstances, dismissal is not the appropriate remedy when

state, the secretary shall immediately cause a copy thereof to be forwarded by restricted mail, addressed to the corporation ... at its principal office...."

6. In citing Mr. Badrtalei's affidavit, the court is not suggesting that the affidavit necessarily shows the affiant has the personal knowledge to testify to MC's operations in the United States.

7. If the plaintiff had made a prima facie showing, the court would agree that the Hague Convention is inapplicable as service is complete when the secretary of state is served. *See Melia v. Les Grands Chais de France,* 135 F.R.D. 28, 32 (D.R.I.1991); *Hammond v. Honda Motor Co.,* 128 F.R.D. 638, 642 (D.S.C.1989); Committee on

there is a reasonable prospect that service may yet be obtained. *Umbenhauer v. Woog,* 969 F.2d 25, 30 (3rd Cir.1992). The plaintiff asks for the opportunity to proceed with service under the requirements of the Hague Convention. (Dk. 17 at 17). The court will quash the service on the following conditions. The court gives the plaintiff sixty days within which he may attempt to serve MC in accordance with the Hague Convention. The court gives the plaintiff twenty days within which he may attempt to make a prima facie showing that MC transacted business in Kansas for purposes of K.S.A. 60–304(f). The court gives the plaintiff forty-five days within which he may attempt to serve MNA or MMA as agents for MC and then to submit a prima facie showing that the jurisdictional contacts of these subsidiary corporations may be imputed to MC. The choice between these alternative conditions is left to the plaintiff.

IT IS THEREFORE ORDERED that the defendant MC's motion to dismiss or, in the alternative, to quash purported service of process (Dk. 6) and amended motion to dismiss (Dk. 9) are granted to the extent that the court quashes the service on the conditions stated above.

Federal Courts of the New York State Bar Association, *Service of Process Abroad: A Nuts and*

*Bolts Guide,* 122 F.R.D. 63, 73 (1989).