TRUMP TAJ MAHAL ASSOCIATES,
Plaintiff,

v.

HOTEL SERVICES, INC., f/k/a Robobar, Inc. et al. Defendants.

No. CIV. 96–3468 JHR.

United States District Court,
D. New Jersey,
Camden Vicinage.

Nov. 9, 1998.

Brian C. Darreff, Marshall, Dennehey, Warner, Coleman & Goggin, Cherry Hill, NJ, for Roboserve (Canada) Ltd.

Rona Z. Kaplan, Cooper, Perskie, April, Niedelman, Wagenheim & Levenson, Atlantic City, NJ, for Trump Taj Mahal Associates.

## OPINION

KUGLER, United States Magistrate Judge.

Presently before the Court is the motion by Brian C. Darreff, Esquire, attorney for Defendant Roboserve (Canada) Ltd. ("Roboserve"), for an order quashing service of process on the grounds of Plaintiff's failure to comply with the procedures set forth in the Hague Convention. For the reasons discussed below, Defendant's motion is DENIED.

*Background*

On July 13, 1998 Plaintiff Trump Taj Mahal Associates (the "Taj") filed an amended

complaint naming as defendants Roboserve, Hotel Services, Ltd., f/k/a Robobar, Ltd. and Citylink Group, Ltd. *See* Exhibit B to Affidavit of Rona Z. Kaplan, Esquire, in Opposition to Defendant Roboserve (Canada) Ltd.'s Motion to Quash Service and in Support of Plaintiff's Cross Motion for Sanctions ("Kaplan Aff.").[1] Because this motion only challenges service on Roboserve, the discussion will be limited to that Defendant.

The Taj attempted service on Roboserve in several different ways in two different countries. First, Plaintiff mailed the summons, amended complaint and United States Marshall's Form 94, Request for Service Abroad of Judicial or Extra Judicial Documents ("USM–94") to Roboserve *via* international certified mail. *See* Kaplan Aff., Exhs. C and D. Second, the Taj sent the summons, amended complaint and USM–94 to the Central Authorities of Canada and the United Kingdom pursuant to Articles 1–6 of the Hague Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters, 15 November 1965, 20 U.S.T. 361–73 (the "Hague Convention"). Finally, the Taj caused the summons, amended complaint and USM–94 to be personally served on William Fattal, an officer of Roboserve identified in Roboserve's answers to interrogatories in a related action. *See* Kaplan Aff., Exhs. E, I and K.

Roboserve is a Canadian Corporation with its principal place of business in Ontario, Canada. *See* Roboserve's Brief in Support of Motion to Quash Service at 2 ("Roboserve Brief"); Kaplan Aff., Exh. E. Roboserve argues that because both Canada and the United States are signatory countries to the Hague Convention, Plaintiff must comply with the treaty's procedures to execute valid service. *See* Roboserve Brief at 2.

Roboserve argues that Plaintiff's service on it was invalid for two reasons. First, Plaintiff failed to send process to the appropriate authority in Canada designated by Canada as the "Central Authority" under the Hague Convention. *See* Roboserve Brief at 3. Second, Roboserve claims that Article 10(a) of the Hague Convention, which provides for "send[ing]" judicial documents by mail, does not allow "service" by mail. *See id.* Defendant argues, without citation to any authority, that "[t]he majority line of cases have consistently held that paragraph [sic] 10(a) provides only for the service of *subsequent* papers after service of process has been effectuated by proper means." *See id.* at 4–5 (emphasis supplied). In essence, Defendant is arguing that service of process must be accomplished through official channels as set forth in Articles 1–9 of the Hague Convention, and that only subsequent litigation papers, such as motions and discovery requests, may be sent through the mail pursuant to Article 10(a).

I find Defendant's argument unpersuasive and hold that while there is a split in authority among the circuit courts of appeal, and indeed a split among the district courts within this circuit, service of process on a Canadian corporation is valid under the Hague Convention when executed by certified international mail.

*Discussion*

■ Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. The Rule provides, in pertinent part:

(h) **Service Upon Corporations and Associations.**

Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected: ... in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f)

1. The cover page to Ms. Kaplan's affidavit indicates that it was written in opposition to Defendant's motion to quash and in support of the Taj's cross motion for sanctions. However, there is nothing in the brief filed with the affidavit that mentions grounds for sanctions or the rule under which sanctions are sought. Therefore, I cannot address Plaintiff's request for sanctions, to the extent that they are even sought. It should be noted, however, that in light of the split in authority regarding service by mail in a foreign jurisdiction discussed below, I likely would not have imposed sanctions on Defendant even if Plaintiff had properly briefed the issue.

except personal delivery as provided in paragraph (2)(C)(i) thereof.

Fed.R.Civ.P. 4(h)(2).

\* \* \* \*

### (f) Service Upon Individuals in a Foreign Country.

Unless otherwise provided by federal law, service upon an individual ... may be effected in a place not within any judicial district of the United States: (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

Fed.R.Civ.P. 4(f)(1).

Accordingly, service abroad on a foreign corporation is governed by the terms of the Hague Convention. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 696–700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 287 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Lilly v. Roussel Corp.,* 23 F.Supp.2d 460, 469–70 (D.N.J.1998). "As a ratified treaty, the Convention is of course the 'supreme law of the land.'" *Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir.1986) (quoting U.S. Const. Art. VI, cl. 2). *Accord DeJames,* 654 F.2d at 288–89.

■ Article 1 of the Hague Convention states that it applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 362. The Convention itself states its purpose as "[d]esiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time, [and] to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure." *Id.*

The Hague Convention provides for three different methods of service abroad. Article 5 permits service through a member state's Central Authority organized pursuant to Article 2. *See Volkswagenwerk,* 486 U.S. at 699, 108 S.Ct. 2104; *see also* 1 B. Ristau, International Judicial Assistance, Civil and Commercial, § 4–3–1 (International Law Institute 1995) ("Article 5 contains the heart of the Convention, and spells out the obligation of the state addressed to execute foreign service requests."). That Central Authority can then execute service pursuant to that state's internal laws, Article 5(a), or by another method requested by an applicant so long as that method does not conflict with the state's internal laws, Article 5(b). 20 U.S.T. 362–63; *see also* 1 B. Ristau, § 4–3–1. Article 9 allows for an alternate method whereby the individual or entity serving process can use consular channels designated by member states. 20 U.S.T. 363. The third, and most relevant method to this discussion, is contained in Article 10(a), which arguably allows for service by mail. 20 U.S.T. 363.

Article 10 provides, in pertinent part: "Provided the State of destination does not object, the present Convention does not interfere with ... the freedom to send judicial documents, by postal channels, directly to persons abroad...." *Id.* Contrary to Defendant's assertion that "it is well settled case law" that Article 10(a) does not allow for service of process *via* mail, there is a split of authority among the circuit courts, as well as a split among the district courts in the Third Circuit on whether Article 10(a) allows service of process abroad using international mail. Neither the Third Circuit nor the United States Supreme Court have addressed this issue.[2]

---

**2.** The Third Circuit has not directly addressed whether the Hague Convention allows service abroad by mail. However, there is some language in *DeJames* that suggests that the court would not limit the Convention's service procedures to the Central Authority method. The court stated: "The treaty provides for methods of serving judicial and extrajudicial documents that the signatories to the treaty have agreed to hon-

or. It provides that each signatory shall designate a Central Authority to process requests for service, but it also allows service to be effected without utilizing the Central Authority as long as the nation receiving service has not objected to the method used." *DeJames,* 654 F.2d at 288. The issue of service abroad by mail was not before the court in *DeJames* and the court may have been referring to alternate service through

In *Bankston v. Toyota Motor Corp.*, the United States Court of Appeals for the Eighth Circuit held that Article 10(a) does not allow service of process by mail. 889 F.2d 172, 174 (8th Cir.1989). The Court reasoned that the Hague Convention used the words "service of process" or "service" when the drafters intended to mean service of papers used to initiate law suits, and intentionally omitted those terms in Article 10(a). *See id.* The Court concluded that the drafters' use of the word "send" in Article 10(a) only authorizes the transmittal of subsequent litigation papers by mail. *See id.*

Similarly in *Postal v. Princess Cruises, Inc.*, the court held that "serve," "service" and "to effect service" are legal terms of art that were used in some sections of the Hague Convention but not in Article 10(a). 163 F.R.D. 497, 499 (N.D.Tex.1995). The Court concluded that the omission of the terms was intentional and must mean that Article 10(a) was intended to apply to judicial papers other than those used to initiate legal actions. *See id.*

Several district courts in this circuit have followed the lead of the *Bankston* court and held that Article 10(a) does not authorize service of process by mail. In *Raffa v. Nissan Motor Co., Ltd.*, the United States District Court for the Eastern District of Pennsylvania held that Article 10(a) does not authorize service by mail for three reasons. 141 F.R.D. 45, 46–7 (E.D.Pa.1991). First, relying on the rationale of the *Bankston* Court, the Court reasoned that had the drafters intended Article 10(a) to apply to

service of process, they would have used the term "service" rather than "send." *See id.* at 46 (citing *Bankston*, 889 F.2d at 174). Second, the Court noted that Japan's own internal law does not allow service of process by mail and, therefore, it is illogical to think that Japan, the relevant country in that litigation, would allow service through the mail by foreign corporations. *See id.* (citing *Suzuki Motor Co., Ltd. v. Superior Court*, 200 Cal.App.3d 1476, 249 Cal.Rptr. 376, 379 (1988)). Third, the Court found that given the Hague Convention's complex procedures for effecting service of process, allowing service by mail in Article 10(a) would render the rest of the treaty meaningless. *See id.* at 46–47 (citing *McClenon v. Nissan Motor Corp. in U.S.A.*, 726 F.Supp. 822, 826 (N.D.Fla.1989)).

In *Gallagher v. Mazda Motor of America, Inc.*, another court in the Eastern District of Pennsylvania held that Article 10(a) does not permit service of process by mail. 781 F.Supp. 1079, 1082 (E.D.Pa.1992) (citations omitted). The *Gallagher* court specifically relied on Japan's own internal aversion to service by mail in reaching its conclusion. *See id.* *See also Soupart v. Houei Kogyo Co., Ltd.*, 770 F.Supp. 282, 285, n. 4 (W.D.Pa. 1991) (noting in *dicta* that had it reached the issue, the court would have held that Article 10(a) does not permit service by mail).[3] *But see Deptula v. Derr Flooring Co.*, 1990 WL 96635, *3 (E.D.Pa. July 6, 1990) ("Federal courts construing the Hague Convention have consistently upheld mail service there-

consular channels, however, the language in that opinion certainly suggests that the court recognizes alternate channels of service permitted under the Hague Convention.

**3.** It is interesting to note that many of the cases that have found that Article 10(a) does not allow for service by mail were analyzing service by mail on a Japanese corporation. *See Bankston*, 889 F.2d at 174; *Gallagher*, 781 F.Supp. at 1082; *Raffa*, 141 F.R.D. at 46; *Soupart*, 770 F.Supp. at 285, n. 4; *see also Fleming v. Yamaha Motor Corp., USA*, 774 F.Supp. 992, 995 (W.D.Va.1991); *Pennebaker v. Kawasaki Motors Corp., U.S.A.*, 155 F.R.D. 153, 157 (S.D.Miss.1994); *Wilson v. Honda Motor Co., Ltd.*, 776 F.Supp. 339, 341–42 (E.D.Tenn.1991); *Wasden v. Yamaha Motor Co., Ltd.*, 131 F.R.D. 206, 209 (M.D.Fla.1990); *Brand v. Mazda Motor of America, Inc.*, 920 F.Supp.

1169, 1172 (D.Kan.1996); *Anbe v. Kikuchi*, 141 F.R.D. 498, 500–01 (D.Haw.1992). *But see Smith v. Dainichi Kinzoku Kogyo Co., Ltd.*, 680 F.Supp. 847, 850–51 (W.D.Tex.1988) (holding Article 10(a) permits service by mail on a Japanese corporation); *Patty v. Toyota Motor Corp.*, 777 F.Supp. 956, 958–59 (N.D.Ga.1991) (same); *Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*, 671 F.Supp. 1525, 1542 (C.D.Cal.1987) (same). It appears that Japan's internal law does not permit service by mail and many of these courts based their opinions at least in part on the Japanese prohibition. It is not clear from the opinions whether the results would have been different had these courts had before them Canadian corporations, or corporations from some other country that allows service by mail according to its own internal law.

under to defendants in countries which are signatories to the Convention and which have not objected to mail service under Article 10.").

A second line of cases holds that Article 10(a) of the Hague Convention allows service of process by international mail. The leading case allowing service by mail is *Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986). In *Ackermann* the Second Circuit held that "service of process by registered mail [does] not violate the Hague Convention." 788 F.2d at 838. The court concluded that use of the word "send" in Article 10(a) and "service" in other sections of the Convention was of no moment and likely attributable to "'careless drafting.'" *See id.* at 839 (quoting 1 B. Ristau, International Judicial Assistance, Civil and Commercial, § 4–28 at 165–67 (1984)).

In *R. Griggs Group, Ltd. v. Filanto Spa,* a thoroughly researched and well reasoned opinion, the United States District Court for the District of Nevada followed the Second Circuit's lead in *Ackermann* and held that Article 10(a) does allow service by mail. 920 F.Supp. 1100, 1107–08 (D.Nev.1996). In reaching its decision the Court relied on, among other things, the location of Article 10(a) within the Convention. *See id.* at 1104–05. The court noted that Articles 2 through 7 of the Convention describe and discuss service through the Central Authorities established by the contracting states, and Articles 8 through 11 discuss and provide for alternative means of service outside of the Convention's Central Authority system. *See id.* The *Griggs* court also noted that many commentators and experts in the field of international litigation have rejected the holding in *Bankston* and its progeny including, among others, Bruno Ristau, former Director of the Office of Foreign Litigation, United States Department of Justice and the United States representative to two Hague Conferences on private litigation, the Practical Handbook On The Operation of The Hague Convention of 15 November 1965 On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters, 2d ed., v–vi (1992), a publication generated from a commission of experts that

convened in 1989 to discuss the operation of the Hague Convention, and the United States Department of State, which repudiated the holding in *Bankston* in a letter from Alan J. Kreczko, Deputy Legal Advisor, to the Administrative Office of the United States Courts and the National Center for State Courts on March 14, 1991. *See id.* at 1106.

At least two courts in this district have followed *Ackermann* and permitted service abroad by mail under the Hague Convention. In *EOI Corp. v. Medical Marketing Ltd.,* Magistrate Judge Wolfson held that "Article 10(a) of the Hague Convention empowers litigants to effectuate service of process through postal channels, provided that the State of destination does not object." 172 F.R.D. 133, 142 (D.N.J.1997). In reaching the decision, Judge Wolfson noted that the overwhelming weight of scholarly authority was in agreement with the Second Circuit's decision in *Ackermann. See id.*

In *Lilly v. Roussel Corp.,* Judge Greenaway, relying heavily on the scholarly authority interpreting the Hague Convention, also held that Article 10(a) allows for service by mail. *See* 23 F.Supp.2d 460, 471–72, 474–75 (D.N.J.1998). Judge Greenaway also found persuasive that neither France nor Italy, the relevant countries in that case, availed themselves of the opportunity to object, pursuant to Article 21, to Article 10(a)'s service by mail provision. *See id.* at 473–74. *Accord Borschow Hospital & Medical Supplies, Inc. v. Burdick–Siemens Corp.,* 143 F.R.D. 472, 479–80 (D.P.R.1992) (holding that the Convention allows service by mail unless receiving country avails itself of its right to object to that method of service).

█ Article 21 allows each contracting State to inform the Ministry of Foreign Affairs of the Netherlands whether it objects to the "methods of transmissions pursuant to articles 8 and 10." 20 U.S.T. 365. Canada has affirmatively stated that it "does not object to *service* by postal channels" under Article 10(a) and that "Canadian law allows the use of postal channels to serve Canadian documents to persons abroad." U.S.C.S. International Agreements at 282–83 (Law. Coop 1995) (emphasis supplied). It appears,

therefore, that Canada allows foreign entities to effectuate service by mail on Canadian citizens and corporations, and allows Canadian citizens to effectuate service of Canadian judicial documents on foreign entities by mail. Canada apparently understands Article 10(a) to allow service of process *via* mail and elects to permit such service on and by its citizens. *Cf. Taft v. Moreau*, 177 F.R.D. 201, 204 (D.Vt.1997) (noting that Canada does not object to service by postal channels and holding service of mail on Canadian corporation is valid); *Loraney Sports Inc. v. Glastic Corp.*, 1997 WL 109473, *2 (S.D.N.Y. March 10, 1997) ("Canada does not object to Article 10(a) of the Hague Convention which upholds 'the freedom to send judicial documents, by postal channels, directly to persons abroad'") (quoting *Ackermann*, 788 F.2d at 830); *Chowaniec v. Heyl Truck Lines*, 1991 WL 111156, *2 (N.D.Ill. June 17, 1991) (holding service of process by mail on a Canadian individual is permissible under the Hague Convention). *Accord Coblentz GMC/Freightliner, Inc. v. General Motors Corp.*, 724 F.Supp. 1364, 1372 (M.D.Ala.1989) (holding the Convention allows service by mail on a Swedish defendant because Sweden did not object to Article 10(a)).

I find persuasive the Second Circuit's decision in *Ackermann* and follow the decisions of the district courts in New Jersey, and hold that Article 10(a) of the Hague Convention permits service of process by mail on foreign corporations so long as the receiving country has not filed an objection to this method.

*Plaintiff's Attempts to Effectuate Service of Process*

The Taj claims that it has attempted service on Roboserve in three separate ways: "by direct personal service upon an officer of [Roboserve], by international registered mail to an officer of Roboserve, and by delivering these documents to the central authority [sic] in Canada and the United Kingdom designated for service of process by those nations under the [Hague Convention]." Taj Brief at 2. If any one of these methods is valid under the Hague Convention, Defendant's motion must be denied. Therefore, I will address in turn each attempt at service.

1. *Personal Service on an Officer of Roboserve*

■ In its response to interrogatories, Roboserve identified William Fattal as the Vice President of Roboserve. The Taj claims that it effectuated service by personally serving Mr. Fattal at his home in London, England on September 24, 1998. Taj Brief at 4; Kaplan Aff., Exhs. I and K. This attempt was invalid because Fed.R.Civ.P. 4(h)(2) expressly states that service on a corporation outside the United States can be accomplished "by any manner prescribed for individuals by subdivision (f) *except* personal delivery as provided in paragraph (2)(C)(i) thereof." (emphasis supplied). Rule 4(f)(2)(C)(i) allows for personal service on an individual. The Taj did not effectuate valid service of process on Roboserve when it personally served William Fattal in England.

2. *Delivery of Summons and Amended Complaint to the Central Authorities in Canada and the United Kingdom*

The Taj claims that it also served Roboserve by sending the summons and amended complaint to the Central Authorities in Canada and the United Kingdom pursuant to Articles 1 through 7 of the Hague Convention. Taj Brief at 3–4; Kaplan Aff., Exhs. F, I and L.

■ Central Authority service of process can be effectuated in Canada through one of two channels. A litigant can send papers to the Canadian Central Authority who will forward the papers to the Central Authority in the province or territory where the entity to be served lives, or the litigant can send the papers directly to the provincial or territorial Central Authority. U.S.C.S. International Agreements at 278 (Law. Co-op 1995). While both methods are valid, Canada has recommended that "[t]o save time, requests should be forwarded directly to the Province or territory concerned." *Id.* The Canadian Central Authority designated pursuant to the Hague Convention is "Director, Legal Advisory Division, Department of External Affairs, 125 Sussex Drive, Ottawa, Ontario, Canada K1A 02G." *Id.* at 280. The recommended provincial Central Authority for Ontario, where Roboserve is located, is "Minis-

try of the Attorney General for Ontario, Reciprocity Office: Civil Law Division, 18 King Street East, Toronto, Ontario, Canada M5C 1C5." *Id.* at 279. The Taj, however, sent the summons and amended complaint to an unnamed person at the "Ontario Court, Provincial Division, Haileybury, Ontario, Canada POJ 1KO." Taj Brief at 3; Kaplan Aff., Exh. F. In support of its assertion that this is the Central Authority for Ontario, the Taj cites Exhibit 1 to its brief, which purports to be the United States Department of State's web site on the Hague Convention. Taj Brief at 3 and Exh. 1. However, even that source lists the addresses cited above and not the address used by the Taj. In fact, I cannot find the address the Taj used anywhere in the Hague Convention, or in Canada's Article 21 submissions to the Convention, or in the State Department web site cited by Plaintiff.

I find that the Taj sent the summons and complaint to the wrong judicial authority in Canada and therefore its efforts to serve Roboserve in Canada through the Canadian Central Authorities are invalid.

■ The Taj also claims that, after learning that Roboserve's Canadian address was no longer valid, it attempted service on Roboserve through the United Kingdom's Central Authority, where Roboserve's Vice President lives. Taj Brief at 3–4; Kaplan Aff., Exh. L. The Taj states that it forwarded the summons and amended complaint to Wragge & Co, a firm of English solicitors, to effectuate service on Roboserve through England's Central Authority. However, it appears that the Taj may have proceeded through the wrong English authority as well. Plaintiff's brief indicates that the summons and amended complaint were sent to the "Supreme Court, Queen's Bench Division in London." *Id.* at 3–4. Additionally, in a letter from Wragge & Co. to Rona Kaplan, attorney for the Taj, Wragge & Co. states that the papers were sent to the "High Court." Kaplan Aff., Exh. L. The Hague Convention indicates that the Central Authority for the United Kingdom is "Her Majesty's Principal Secre-

tary of State for Foreign and Commonwealth Affairs, London SW1A 2AL." U.S.C.S. International Agreements at 300 (Law. Co-op 1995). The Convention also lists "The Senior Master of the Supreme Court of Judicature, Royal Courts of Justice, Strand, London, WC2A 2LL" as the Central Authority for England and Wales. *Id.; see also* United States Department of State, *Hague Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil and Commercial Matters,* (visited on Oct. 30, 1998) http://travel.state.gov/hague_service.html. In light of Plaintiff's failure to proceed through the proper Canadian authorities pursuant to the Hague Convention and the inexact way the Taj has described the authority it proceeded through in England, I cannot be certain that the Taj proceeded through the proper Central Authority there. "Once there has been a challenge to in personam jurisdiction the burden of proof is on the Plaintiff to establish that the court properly has jurisdiction over those parties who challenge it." *Wright v. American Standard, Inc.,* 637 F.Supp. 241, 242 (E.D.Pa.1985) (citation omitted); *see also Mellon Bank (East) PFSF, Nat'l Assoc. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). I find that the Taj has not met its burden of demonstrating to the Court that it proceeded through the proper British authority designated by the United Kingdom pursuant to the Hague Convention. The Taj did not effectuate proper service of process on Roboserve by proceeding through the Central Authority in England.[4]

### 3. *Service by International Registered Mail*

■ As discussed above, I find that Article 10(a) of the Hague Convention permits service of process by mail on foreign corporations. The Taj claims that it made two attempts at service by mail. It first sent the summons and amended complaint to Roboserve's address identified in its answers to interrogatories, 80 Galaxy Boulevard (Unit 8), Rexdale, Ontario, Canada M9W 4YA. Taj

---

4. Because I find that Plaintiff has not shown that it proceeded through the proper British Central Authority, I will not address whether proper ser-

vice on a Canadian corporation can be made by proceeding through the Central Authority of England.

Brief at 2–3; Kaplan Aff., Exhs. D and J. According to the Taj, the papers came back marked "return to sender, addressee unknown." Taj Brief at 3; Kaplan Aff. at ¶ 10.

This address was provided in Roboserve's certified answers to Plaintiff's interrogatories. *See* Kaplan Aff., Exh. E, Response to Interrogatory 2(d). If this address is no longer valid, Roboserve is in violation of Rule 26(e), Supplementation of Disclosures and Responses, which requires a party "to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process in writing." Fed.R.Civ.P. 26(e)(2). If the address given in the interrogatory response is no longer Roboserve's place of business in Canada, Roboserve has an obligation to supplement Interrogatory Response Number 2(d) and provide Plaintiff with its current address.

In any event, Roboserve did not receive actual notice of this action through the mailing to its Canadian business address and, therefore, I cannot find that the mailing to Canada accomplished valid service.

 The Taj also mailed the summons and amended complaint to Roboserve through its Vice President, William Fattal, at Roboserve's business address in London, England. The papers were addressed to "Roboserve (Canada) Ltd." and sent to an address that was on the Roboserve letterhead used on a letter sent from Mr. Fattal to Roboserve's counsel on August 17, 1998. Kaplan Aff., Exhs. G and H. The Taj does not say in its brief that the letter sent to Roboserve through Mr. Fattal in London was returned as undeliverable. I assume that it was not returned.[5]

I find that Roboserve was served through its corporate officer by mail in London. Mr. Fattal was identified as Roboserve's vice president and represented himself as a corporate officer of Roboserve in Roboserve's interrogatory responses. Moreover, Mr. Fattal's August 17, 1998 letter to counsel appears to be written on Roboserve letterhead and indicates that the London address, to which service was mailed, is Roboserve's business address. Finally, in light of Roboserve's failure to supplement its discovery responses and provide Plaintiff with its current business address in Canada as required by Rule 26, I find that service on Roboserve in England by international registered mail was reasonably calculated to give it notice of the suit and comports with Article 10(a) of the Hague Convention.

Therefore, I hold that the Taj effectuated valid service of process on Roboserve. Roboserve shall answer or otherwise respond to the amended complaint within 20 days of entry of this order.

---

**5.** England, like Canada, has not objected to Article 10(a)'s service by mail prescription. *See* U.S.C.S. International Agreements at 301 (Law. Co-op 1995); *EOI Corp.*, 172 F.R.D. at 138; *see also* United States Department of State, *Judicial Assistance in the United Kingdom (England, Scotland, Wales and Northern Island)* (visited Oct. 30, 1998) http://travel.state.gov/uk_legal.html ("The U.K. has not declared that it objects to Article 10(a) of the Hague Service Convention. Therefore, service by international registered mail is permitted.").