**DIMENSIONAL COMMUNICATIONS, INC., Plaintiff,**

v.

**OZ OPTICS LIMITED, Defendant.**

**No. CIV.01–cv–4893 (WGB).**

United States District Court, D. New Jersey.

Sept. 6, 2002.

Timothy J. O'Neill, Windels, Marx, Lane & Mittendorf, LLP, Princeton, NJ, for Dimensional Communications, Inc.

David L. Epstein, Post, Polak, Goodsell, MacNeill & Strauchler, P.A., Roseland, NJ, for OZ Optics Limited.

## OPINION

BASSLER, District Judge.

Defendant OZ Optics Limited moves pursuant to Rule 12(b)(5) to dismiss the Complaint or, alternatively, to quash service of process on the grounds that such service was insufficient under the Fed. R.Civ.P. 4(h). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity). For the following reasons, Defendant's motion is **denied.**

## I.  BACKGROUND

OZ Optics Limited ("OZ Optics Canada") is a Canadian corporation having its principal place of business in Ontario, Canada. It has no offices in the State of New Jersey, is not registered to do business in the State of New Jersey, nor does it have a registered agent in the State of New Jersey. Additionally, OZ Optics Canada maintains no property or employees in the State of New Jersey.

OZ Optics Inc. ("OZ Optics New Jersey") is a wholly owned subsidiary of OZ Optics Canada. It is a Delaware corporation and is registered to do business in the State of New Jersey, where it has designated the Corporation Trust Company as its registered agent. It is alleged that OZ Optics New Jersey operates as an independent entity, filing its own tax returns, maintaining separate books and records, and having its own bank accounts.

The Complaint alleges that OZ Optics Canada breached its contract with Dimensional Communications Inc. ("DCI"). The Complaint is addressed to OZ Optics Canada at its Ontario address and names OZ Optics Canada as the only defendant. There are no allegations in the Complaint pertaining to OZ Optics New Jersey. It appears from the face of the Complaint and the attachments thereto that all of the transactions at issue in this case were between OZ Optics Canada and DCI.

Shortly after filing the Complaint on October 22, 2001, DCI sent to OZ Optics, at its Ontario address, a Notice of Lawsuit and request for Waiver of Service of Process. OZ Optics Canada refused to sign the waiver. DCI then undertook a variety of methods to effectuate service on OZ Optics Canada.

On or about January 10, 2002, DCI purported to effect personal service on OZ Optics Canada by personal delivery of a copy of the Summons and Complaint to OZ Optics New Jersey's registered agent, the Corporation Trust Company, in West Trenton, New Jersey. The Corporation Trust Company forwarded the Complaint to OZ Optics New Jersey, which in turn forwarded it to OZ Optics Canada.

On or about January 11, 2002, DCI purported to again effect personal service on

OZ Optics Canada by having a private process server, Wilfred Schwartz, personally deliver a copy of the Summons and Complaint to OZ Optics Canada at its Ontario address. Wilfred Schwartz claims that he has been in the business of serving judicial documents in Canada for ten years, and is competent to personally serve judicial process in Ontario. *See* Schwartz Decl., ¶¶ 1–2. The delivery was accepted by Mr. Jim Burke, the Vice President of Operations of OZ Optics Canada. *Id.*, at Ex. A.

OZ Optics Canada claims that the foregoing methods were insufficient to properly effectuate service of process on OZ Optics Canada. It, therefore, moves to dismiss the Complaint or, alternatively, to quash service of process.

## II. *APPLICABLE STANDARD*

■ Under Fed.R.Civ.P. 12(b)(5), a complaint may be dismissed for insufficiency of service of process. However, where service of process is found to be ineffective, the court has discretion to either dismiss or to quash service which has made. *Nat'l Expositions, Inc. v. DuBois,* 97 F.R.D. 400 (D.C.Pa.1983).

Service of process upon foreign corporations is governed by Fed.R.Civ.P. 4(h). In the United States, a foreign corporation may be served either pursuant to the laws of the state in which the district court is located or by delivering a copy of the summons and complaint to an officer or agent within the United States. Fed.R.Civ.P. 4(h)(1), *incorporating,* Fed.R.Civ.P. 4(e). Outside the United States, service may be accomplished in several ways, including by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Fed.R.Civ.P. 4(h)(2), *incorporating,* Fed.

R.Civ.P. 4(f). Because the United States and Canada are both signatories to the Hague Convention, it is applicable to the present action.

## III. *DISCUSSION*

Defendant claims that delivery of the summons and complaint to OZ Optics New Jersey's registered agent was insufficient under New Jersey law to accomplish service on its parent, OZ Optics Canada. Additionally, it claims that DCI made no effort to serve OZ Optics Canada under the Hague Convention. Defendant contends that as a result, DCI has failed to comply with the requirements of Rule 4(h) and, therefore, the Complaint should be dismissed or service of process should be quashed.

DCI does not attempt to defend the sufficiency under New Jersey law of serving the subsidiary's registered agent. Instead, it argues that by delivering a copy of the summons and complaint to Jim Burke, a corporate officer of OZ Optics Canada at its address in Ontario, it effected proper service on OZ Optics Canada under the Hague Convention, as provided by Rule 4 of the Federal Rules of Civil Procedure.

■ The principal method for service of judicial documents abroad, as set forth in Articles 2 through 7 of the Hague Convention, is through a designated Central Authority, who in turn either serves the documents or arranges to have them served by an appropriate agency. *See* Multilateral Service Abroad of Judicial and Extrajudicial Documents Convention done at The Hague, Nov. 15, 1965, 20 U.S.T. 361, Art. 2–7. This, however, is not the only acceptable method of service under the Convention. As recognized by the Third Circuit, the Hague Convention permits alternate channels of service so long as they are not objected to by the receiving State. *De-*

*James v. Magnificence Carriers,* 654 F.2d 280, 288 (3d Cir.1981); *see also Trump Taj Mahal Assoc. v. Hotel Svces., Inc.,* 183 F.R.D. 173 (D.N.J.1998).

For example, service may be effected through diplomatic or consular agents of the sending State (Art. 8); through consular channels to authorities within a contracting State who are authorized by that State to effect service (Art. 9); through the judicial officers, officials, or other competent person of the State of destination (Art. 10); pursuant to any other agreement between the States involved (Art. 11); or pursuant to the internal law of the receiving State for documents coming from abroad (Art. 19).

Here, DCI contends that it complied with Article 10(b) of the Hague Convention when, through a process server in Ontario, it personally effected service of the summons and complaint on the Vice President of OZ Optics Canada, Jim Burke. Article 10 provides that if the State of destination does not object, service may be effected by judicial officers, officials or other competent persons of the State of origin directly through judicial officers, officials or other competent persons of the State of destination. Hague Convention, at Art. 10.

Canada has not availed itself of the opportunity, as provided under Article 21,[1] to object to Article 10(b)'s service provision. In fact, on accession, Canada affirmatively stated that it does not object to the methods of service set forth in Article 10(b) and (c). U.S.C.S. International Agreements, at 283 (Law Co-op 1995); *see also http:// www.hcch.net/e/status/stat14e.html # ca* (Canada Accession Notification, Declaration III).

Courts have also looked to the internal service rules of the destination State to determine whether that State would object to the particular method of service utilized under Article 10. *Hunt's Pier Assoc. v. Conklin,* 156 B.R. 464, 470 (Bankr.E.D.Pa. 1993). The applicable Ontario rule of civil procedure is Rule 16 regarding Service of Documents. Rule 16.01(1) requires that originating process (i.e., the summons and complaint) shall be served personally under Rule 16.02 or by alternative to personal service provided in Rule 16.03. Rule 16.02(1)(c) provides, as to personal service on a corporation that is not a municipality, that such service shall be made "by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business."

Service in the present action was effected by leaving a copy of the summons and complaint with Jim Burke, the Vice President of Operations of OZ Optics Canada. Such service clearly complied with Rule 16.02(1)(c). Accordingly, this Court concludes that Ontario, Canada would not object to the method of service utilized by DCI here.

Defendant claims that in addition to satisfying the minimum requirements for service in Canada, in order to satisfy Article 10(b) of the Convention, DCI was also required to comply with the Federal Rules of Civil Procedure. Relying on *Trump,* 183 F.R.D. at 179, Defendant argues that personal service on Jim Burke was insufficient because the federal rules of civil procedure expressly excepts personal service under Rule 4(f)(2)(C)(i) as an appropriate

---

1. Article 21 of the Convention provides that Each contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Nether-

lands ... where appropriate, of ... opposition to the use of methods of transmission pursuant to articles 8 and 10 ...
20 U.S.T. 361, Art. 21

method of service on a corporation. *See* Fed.R.Civ.P. 4(h)(2). However, Plaintiff's reliance on *Trump* is misplaced.

Under Rule 4(h)(2), a corporation may be served outside the United States, "in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (f)(2)(C)(i) thereof." Fed.R.Civ.P. 4(h)(2). In turn, Rule 4(f)(2)(C)(i) refers to "delivery to the *individual* personally." (emphasis added).

In *Trump*, the New Jersey district court found that **personal** service on the Vice President of the defendant Canadian company at his **home** address was invalid under Rule 4(h)(2), *Trump*, 183 F.R.D. at 179. The *Trump* court never discussed whether such service was proper under Article 10(b). After finding that Article 10(a) of the Convention permitted service of process by mail and that Canada had not objected to such service, *id.* at 179, the court then went on to find that **mailing** a copy of the summons and complaint to that same officer at his **business** address was valid under Article 10(a) of the Convention. *Id.* at 181. After determining that service by mail was valid under Article 10(a), the court did not go on to analyze whether this method of service complied with the Federal Rules of Civil Procedure.

Given Canada's apparent preference for personal service, *see Islip,* 18 F.Supp.2d at 1057, and that the Federal Rules of Civil Procedure do not provide for service by mail, this Court finds that the critical fact was not that the officer was served personally, but the fact that he was served at the

wrong address (home instead of business). Because, unlike the personal service in *Trump,* personal service here was effected on the Vice President at his **business** address, *Trump* is inapposite.

The court in *Hunt's Pier* held that "[i]n addition to satisfying the minimum requirements for service in the destination country, ... the Hague Convention also requires that the method of service must comply with 'the internal law of the forum state.'" 156 B.R. at 471, *quoting, Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). A careful reading of the Supreme Court's opinion in *Schlunk,* however, reveals that it is necessary to look to the internal law of the forum state to determine not whether the particular method of service complies with internal procedures, but whether compliance with the Hague Convention is even required. *Schlunk,* 486 U.S. at 701, 108 S.Ct. 2104 (stating that the forum's internal law governs whether service implicated the Convention).

For example, where a forum's internal law mandates "transmittal of documents for service abroad" as the only applicable method of serving process, then the Convention is the exclusive means of effecting service. *Id.* at 706, 108 S.Ct. 2104. However, where the internal laws of the forum state provide for an alternative means of service domestically, then the parties may dispense with the requirements of the Hague Convention altogether.[2] *Id.* at 707–08, 108 S.Ct. 2104.

---

2. For example, "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause, [the court's] inquiry ends and the Convention has no further implications." *Id.* at 707, 108 S.Ct. 2104. Here, DCI also purported to serve process on Defendant's domestic agent, OZ Optics New Jersey. Plaintiff argued that this method of service was invalid under New Jersey law and that, therefore, compliance

with the Hague Convention was necessary. DCI never responded directly to this argument. Instead it immediately asserted that service was properly made under the Hague Convention. Because this Court finds that service was valid and proper under the Hague Convention, it need not address whether service on OZ Optics New Jersey was valid under state law.

Here, the Federal Rules of Civil Procedure provide parties with the option of completing service either through a domestic agent if such service is valid under state law, Fed.R.Civ.P. 4(h)(1), *incorporating*, Fed.R.Civ.P. 4(e), or pursuant to the Hague Convention. Fed.R.Civ.P. 4(h)(2), *incorporating*, Fed.R.Civ.P. 4(f). Because the Federal Rules of Civil Procedure do not require the transmittal of documents abroad, compliance with the Hague Convention is not mandatory. Nevertheless, because nothing "prevents compliance with the Convention even when internal law of the forum does not so require," *Schlunk*, 486 U.S. at 706, 108 S.Ct. 2104, application of the Hague Convention here was proper. Nobody disputes the applicability of the Hague Convention.

■ Because pursuant to Fed.R.Civ.P. 4(h)(2), incorporating R. 4(f)(1), the Hague Convention applies to service of process in this matter, and because, as concluded above, Canada would not object to service under Article 10(b), service of process was properly effected pursuant to Article 10(b) of the Convention by serving Jim Burke at OZ Optics Canada's offices.

■ Defendant next argues that the service was invalid under Article 10(b) because it was not effected by a competent person as required by Article 10(b). Here, the summons and complaint were served by Wilfred Schwartz, who declares that he is a process server and an agent of Select Document Services, Inc. in Toronto, Ontario, Canada. Schwartz Decl., at ¶ 1. He claims that he has been in the business of serving judicial documents in Canada for 10 years. *Id.*

To date, only one Court has squarely addressed the issue of competent persons under Article 10(b). The Court of International Trade, in *United States v. Islip*, 18 F.Supp.2d 1047, 1055–56 (CIT 1998), recognized the Convention's ambiguity as to the identity of persons competent to

effect valid service under Article 10(b). It observed that Article 10(b) was the focus of litigation in only a few cases, none of which provided a reasoned explanation of how it determined that service had been effected by and through competent persons. *Id.* at 1056.

It is unclear whether the question of who is competent to effect service is to be determined by the law of the forum state or the law of the destination state. *Id.* at 1056. One who is deemed competent under federal law may not be competent under the law of most civil law States. *Id.* at fn. 9

In the New Jersey district court, "[s]ervice may be effected by any person who is not a party and who is at least 18 years of age ..." Fed.R.Civ.P. 4(c)(2). In Ontario, the rules of civil procedure do not expressly state who is competent to effect service of process. However, those rules "do not proscribe government officials or even private persons from effecting service of process." *Islip*, 18 F.Supp.2d at 1057; *see also* Rule 16 of Ontario Rules of Civil Procedure. Mr. Schwartz claims that he is competent to personally serve process within Ontario, Canada, the particular territory where process was served. Schwartz Decl., at ¶ 2. The Ontario rules of civil procedure state nothing to the contrary.

Reasoning that Canada's internal laws of civil procedure were flexible about who was authorized to effect service of process, the Court of International Trade chose to adopt "an expansive interpretation" of who in Canada is competent to effect service under Article 10(b). *Islip*, 18 F.Supp.2d at 1057. It then concluded that because under USCIT R. 4(c) "any person who is not a party and who is at least 18 years of age" was competent to effect service of a summons and complaint, personal service on the defendant in Canada by a Canadian

Customs Investigator who was over eighteen years of age was valid. *Islip*, 18 F.Supp.2d at 1057.

Additionally, although Canada heads its declaration acceding to Article 10(b) and (c) as "Service through judicial officers, notably 'huissiers', etc., of the requested State," the Court of International Trade concluded that Canada did not intend transmission of documents through judicial officers to be the only alternative to transmission through a central authority. *Id.* at 1056–57. First, Canada could have, but did not, expressly limit its accession in this manner. *Id.* Second, the use of the word "etc." in the heading impliedly includes the "officials," "other competent persons," and "person[s] interested in a judicial proceeding" referred to in Article 10. *Id.* Nevertheless, even if Canada intended "judicial officers, notably 'huissiers' '" to be the only alternatives, "huissiers" is a French legal term meaning process servers. *See* Henry Campbell Black, *Black's Law Dictionary*, 4th ed., at 83 (West 1968). Therefore, Canada's accession expressly permits service by persons such as Mr. Schwartz.

This Court notes that numerous courts have found personal service by a process server under Articles 10(b) and (c) to be valid in other States. *See, e.g., Koehler v. Dodwell*, 152 F.3d 304 (4th Cir.1998); *Tamari v. Bache & Co.*, 431 F.Supp. 1226 (N.D.Ill.1977), *aff'd*, 565 F.2d 1194 (7th Cir.1977). No court holds service under Article 10(b) by a process server invalid in Canada. Additionally, a process server is deemed competent to effect service of process under the federal rules of civil procedure, Fed.R.Civ.P. 4(c)(2), and presumably under the Ontario rules of civil procedure. Finally, and perhaps most importantly, Canada's accession to the Hague Convention expressly refers to service under Article 10(b) by "huissiers" or, as the term is defined, process servers.

This Court, therefore, finds that in Canada a process server is competent to effect service of process under Article 10(b). Accordingly, personal service of the summons and complaint by Mr. Schwartz was valid under Article 10(b) of the Hague Convention and, consequently, under Fed.R.Civ.P. 4(h).

Because this Court finds that personal service of the summons and complaint by Mr. Schwartz on Jim Burke at the offices of OZ Optics Canada was valid under Article 10(b) of the Hague Convention, it need not determine whether service on NJ Optics New Jersey's agent was valid.

## IV. *CONCLUSION*

For the foregoing reasons, service of process is deemed valid under Article 10(b) of the Hague Convention, and Defendant's motion to dismiss or, alternatively, to quash service is **denied.**